# EXHIBIT A

A TRUE COPY ATTEST

DEPUTY SHERIFF
Middlesex County

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _2181CV00039_

_AJAY PANDEY_
_____, PLAINTIFF(S),

_THE. MATHWORKS INC,_
_MARK E. STEFANICK,_
_KATALIN M. POPOVICI,_ DEFENDANT(S)
_HIDAYET M.T. SIMSEK,_

**SUMMONS**

THIS SUMMONS IS DIRECTED TO _THE MATHWORKS INC._ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Middlesex County_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**
_Superior_

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: _Middlesex County Superior_

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex_ Court, _Superior_ (address), by mail or in person, **AND**
   _Middlesex MA_
   _200 Trade Center_
   _2nd Floor_
   _Woburn_
   _MA, 0180_  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: _AJAY PANDEY — 57 South, Walpole St., Sharon, MA. 02067_

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

# IN THE MIDDLESEX COUNTY SUPERIOR COURT

200 Trade Center, 2nd Floor, Woburn, MA 01801

Jan 05, 2021

| | |
|---|---|
| AJAY PANDEY,<br>    Plaintiff,<br><br>v.<br><br>THE MATHWORKS, INC.,<br>          Defendant<br><br>MARK E STEFANICK,<br>          Defendant<br><br>KATALIN M. POPOVICI,<br>          Defendant<br><br>HIDAYET T. SIMSEK,<br>          Defendant | Case No: 218 CV 00039 |

## TITLE: COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNSEL:

COUNSEL FOR PLAINTIFF: Pro Se, Plaintiff representing himself as of filing of this complaint.

**TEXT:** Plaintiff pro se Ajay Pandey ("Plaintiff" or "Mr. Pandey", or "I"), for his Complaint in this action against Defendants The Mathworks, Inc., Mark E Stefanick, Katalin M. Popovici, and   Hidayet T. Simsek ( collectively "Defendant", "Defendants" or "Mathworks"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination, harassment and retaliation against Plaintiff because of his disabilities national origin, color/race and/or age, and because of his repeated complaints about such unlawful discrimination, harassment and retaliation, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title [*2]   VII"); failing to properly accommodate Mr. Pandey as is required under M.G.L. c. 151B and the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"); violation of the Age Discrimination in Employment Act ADEA, 1967. Intentional Infliction of Emotional Distress, Violations of Immigration & Nationality Act (H-1B), A misrepresentation of material fact on the labor condition application; and willful Violation of the work contract and requirement of 8 USC 1182, and 20 CFR part 655.810; A willful failure pertaining to wages/working conditions, labor condition application and discrimination against an employee specificity 20 CFR 655.801, and 8 USC 1182(n)(2)(c).

2. Over the course of Plaintiff's nearly four-year employment history at the Mathworks, Defendant repeatedly subjected Plaintiff to unlawful discrimination and harassment because of his race/color, age, disabilities and national origin and, unlawful retaliation leading to unlawful termination after plaintiff Ajay Pandey attempted to return to work after FLMA leave due to multiple health conditions. Even after the termination of employment defendant continued conduct of harassment and retaliation against plaintiff time to time.

3. Defendant's conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to his professional and personal reputation, and severe mental anguish and emotional distress. Plaintiff offers expert opinion for; including but not limited to; medical, telecommunication, accounting and/or software development, at/before trial as mandated by applicable laws.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII, Section 1981 and the Americans with Disability Act. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Additionally, pursuant to Massachusetts Long-Arm Statute c. 223A, § 3, this court have personal jurisdiction over all parties residing outside of Massachusetts.

**PARTIES**

6. Plaintiff Ajay Pandey is a Citizen of India working in the United States on H1-B visa regulated by Department of Labor – DoL. Plaintiff resides at 57 South Walpole St, Sharon, MA, 02067, plaintiff is a disabled person and suffers from Diabetes and Attention Deficit and Hyperactivity Disorder (ADHD Henceforth), plaintiff also started suffering from "Depression" during the course of employment, due to various unlawful conducts of defendant(s). From April 29 2013 until his unlawful termination in March 2017, Mr. Pandey has been an employee at Defendant Mathworks's Headquarter in buildings owned by defendant at Apple Hill Drive in Natick, MA 01760-2098. At all relevant times, Mr. Pandey met the definition of an "employee" under all applicable statutes.

7 (A). Defendant "The Mathworks" is a corporation authorized to conduct business in the State of Massachusetts with its principle executive office located at 3 Apple Hill Drive, Natick, MA 01760-209. At all relevant times, Defendant owned and maintained buildings and operated business from this location. At all relevant times, Defendant met the definition of an "employer" under all applicable statutes.

7 (B). Defendant "Mark E Stefanick" is an individual residing at "1233 Elm St, Greensburg, PA 15601-5351. Mark E Stefanick is/or has been working for a vendor Cigna managing LTD claims on behalf of "Mathworks Long Term Disability Plan".

7 (C). Defendant "Katalin M. Popovici" is an individual residing at "16 Strawberry Hill Rd, Natick, MA 01760-3656". Katalin M. Popovici is/or has been em-

ployee of defendant Mathworks. Worked as a mentor of plaintiff at some relevant duration of time.

7 (D). Defendant " Hidayet T. Simsek" is an individual residing at "66 Cloverdale Rd, Newton Highlands, MA 02461-1811. Hidayet T. Simsek is/or has been employee of defendant Mathworks. Worked as supervisor of plaintiff at some relevant duration of time.

### PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. On or about Dec 20, 2017, Mr. Pandey filed a Verified Complaint (the "Dec 20, 2017 Complaint") with the Massachusetts Commission Against Discrimination (the "MDAD") charging Defendants with unlawful discrimination because of disability, national origin, age and/or race/color retaliation for complaining about discrimination, seeking time off to take care of plaintiff's own health, in addition charging defendant Mathworks for failure to accommodate and follow interactive process mandated by Americans with Disability Act.

10. MCAD issued a Notice and Final Order of Dismissal of said Complaint, authorizing Mr. Pandey to pursue his claims of unlawful employment discrimination on the basis of national origin race/color and/or disability in another judicial forum. On Oct 05, 2020 Equal Employment Opportunity Commission ("EEOC") adopted the MCAD's findings, a notice of right to bring suit in competent court based on the allegations of unlawful discrimination on the basis of national origin race/color and/or disability set forth in the Dec 20, 2017 Complaint was sent. On Oct 17, 2020, Mr. Pandey received a notice of right to bring suit in competent court based on the allegations of unlawful discrimination on the basis of national origin, disability and/or race/color set forth in the Dec 20, 2017.

11. This action is being filed within 90 days of Plaintiff's receipt of his right-to-sue letters from the EEOC.

12. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### I. Background

13. Ajay Pandey is a hard-working 47-year-old Indian citizen, working in United States on H1-B visa. During last 24 years of his carrier Ajay Pandey served at various positions such as "System Analyst", "Software Engineer", "Senior Software Engineer", "Senior Member of Technical Staff", "Development Lead", "Project Manager", and "Engineering Manager" for reputed Organizations such as "Microsoft", "Dell Corporation", "Cadence Design Systems", "Mathworks Inc.", and "Verisk Analytics (AIR Worldwide)". Ajay Pandey's exemplary work and dependability was recognized by things like raise and merit increments, promotions, rewards, awards and bonuses, by his previous employers including the defendant Mathworks.

14. Mr. Pandey was recruited by defendant "Mathworks" after a multi-round interview process. And began working as Senior Software Engineer at the defendant's offices at 3 Apple Hill Drive Natick, MA from April 29, 2013.

15. As set forth in greater detail below, throughout his employment at the Mathworks. Mr. Pandey has been subjected to a shocking barrage of discrimination and harassment on the basis of his race/color, age, national origin and disabilities. Despite Mr. Pandey's many complaints, pleas for the Mathworks to bring an end to the discriminatory and harassing conduct committed against him by his supervisors and co-workers, and executives, the Mathworks has turned a blind eye to his increasingly desperate plight. For a substantial duration in 2016 Mathworks forced Mr. Pandey to work despite Mr. Pandey's health was not permitting and Mr. Pandey was in need for break from work.

### A. Discrimination, Harassment and Threats due to disability of Insomnia and discrimination due to color/race and national origin

16. Throughout his employment at the Mathworks, Mr. Pandey has been singled out by HR employees and managers at the Mathworks - including his direct supervisors who have subjected him to a constant barrage of discrimination, harassment, threats and intimidation because of his disability (flair-ups of Insomnia) which requited him to take above the average sick time. Although during normal days there was no impact on work due to this disability.

17. Mathworks demanded extra working hours in lieu of lost work hours due to Insomnia. Mr. Pandey obliged to replace hours due to sick time with the time working late. Apart from last few months of Mr. Pandey's tenure at Mathworks,

the effect of sickness on his performance was limited to loss of regular work hours. Mr. Pandey easily mitigated the effect of these interruptions by working extra hours. Mr. Pandey was still penalized by Mathworks by keeping his performance rating lower than what it should have been. Although Mr. Pandey was given raise/merit increase and stockholder bonuses for both 2013 and 2014 performance reviews.

18. Soon Mathworks started demanding work hours far more then actually lost due to sickness. Over months Mr. Pandey saw his health improve and Insomnia episodes stopped for many months. But despite no lost hours due to sickness, MathWorks kept demanding Mr Pandey to work extra hours and it became a norm. When Mr. Pandey resisted to unreasonable long working hours, he was threatened that he will not be considered for Green Card sponsorship if he doesn't oblige. Mr. Pandey was forced to give Mathworks long working hours, sometimes reaching 16 to 17 hours a day and frequently 11 to 12 hours a day, spanning late nights and over weekends. Mr. Pandey was frequently told by supervisor that all "Indians" and sometimes all "Browns" work that long.


**B. Disparate treatment/Disparate impact, Discrimination due to race/color and national origin.**

19. Mathworks have a policy to provide food for people who work until late, at the cost of Mathworks. Employees who grew up in East Asia frequently get food from Chinese Restaurant. People from India (South Asia) are not provided any option to order food from Indian Restaurants. This is another discriminatory practice. During his late stays Mr. Pandey frequently ordered food from Indian restaurants out of his own pocket, or reluctantly had dinner which was not of his taste, or remained hungry for few hours until back home, a few times Mr. Pandey made a 38-mile visit back home only to come back to work at Mathworks after dinner; or work from home using VPN during late hours.


**C. Retaliation and harassment for seeking FLMA - transfer to new team under non-cooperative supervisor, delebrate infliction of emotional distress.**

20. Mr. Pandey was sick for 5 days in March 2015. Mr. Pandey requested for FLMA. After the FLMA request was rejected by Mathwork's HR department, Mr. Pandey offered to have these lost days deducted from his vacation days or consider them as unpaid time off, which Mathworks initially declined. Mathworks demanded the requirement of Medical notes fulfilled in the format required by Mathworks. Mr Pandey was in the process of switching Healthcare providers due to his move from

New Hampshire to Massachusetts. Mr. Pandey was asked to visit to old doctors many times during harassment over months by Mathworks HR department. In the process Mathworks demanded much more medical information about him, than his doctors were willing to share. Out of frustration of his repeated visits, Dr. Golosarsky filled one of FLMA form which mentioned that Mr. Pandey is suffering from multiple health conditions.

21. Mr. Pandey was shifted to a new team within weeks of receiving the note of Dr. Golosarski. New supervisor (defendant Mr. Simsek) did not try to assimilate Mr. Pandey to bring him up to the speed. Mr. Pandey was made to sit far from all but only one team members. Mr. Pandey was overwhelmed by small tasks which were not trackable and don't credit much in annual performance reviews.

**D. Continued Discrimination due to race/color, disability of past Insomnia and discrimination due to color/race, national origin, Harassment and Tortures conduct of forcing to work when not mentally fit, intentional infliction of emotional distress.**

22. Around the beginning of 2016 Mr. Pandey started feeling depressed, but Mr. Pandey still managed to work on trackable tasks too. Healthcare providers of Mr. Pandey noticed depression and recommended a long break from work and start a therapy. Therapy was desperately needed to recharge mental energy after years of long working hours. Mr. Pandey's repeated vacation requests were denied by Mathworks, despite his insistence that doctors are recommending a break from work to start a therapy. At times Mr. Pandey was in tears, once he broke in tears in front of Ms. Sheila McArdle when he was denied vacation time again.

23. Mr. Pandey's doctors emphasized that the symptoms were exacerbated by the disruptions to his daily meal and sleep cycles that resulted from his working long hours until late in the night. And besides depression there was risk of falling back to same chronic insomnia from which Mr. Pandey recovered after years.

24. When Mr. Pandey told the Mathworks that his doctors had advised him that his health had been compromised and would continue to deteriorate if he remained on the long working hours with almost no vacation breaks for years, the Mathworks refused and told Mr. Pandey that he was new to the team and need a lot of ramp up to catch up with the team busy and racing for important releases.

25. Fearing that the Mathworks may have misunderstood the severity of his medical conditions and the urgency of his need for break, Mr. Pandey provided many notes from his doctors explaining the medical needs and suggested temporary alternatives of long break from work. Although Mr. Pandey submitted many notes from his

doctors, the Mathworks refused to accommodate his medical needs and every note was followed by retaliation from Mathworks.

26. The obvious discriminatory reason were stated to Mr. Pandey directly by his supervisor (defendant Mr. Simsek) when Mr. Pandey asked to leave for home at 7:30 pm. "You can't get your way around by pretending sick, take a walk out of your office and see for yourself how many 'Asians' still are working."

**E. Continued Discrimination due to race/color, and disability of past Insomnia and recent depression, second retaliation for seeking accommodation, Harassment and Tortures conduct of forcing to work when not mentally fit, intentional infliction of emotional distress.**

27. To work around the situation of Mr. Pandey's inability convince his employer to take a break from work, doctor requested accommodation to stop working in awkward night hours.

28. Soon after this request of accommodation, Mathworks skipped performance evaluation for the duration of May 2015 to April 2016. The performance evaluation was due around this time, and was done for other employees. Mr. Pandey's access to performance system was blocked when Mr. Pandey was doing his part in annual performance evaluation system. When supervisor Mr. Tunc Simsek was informed about it, he casually said that he will look into it and Mr. Pandey need not to bother. Later on, follow up Mr. Tunc Simsek he said that there is no hurry to complete the process.

29. Despite the note from Mr. Pandey's doctors, the Mathworks was unyielding in its refusal to force Mr. Pandey for long workday until late night hours. The Mathworks also failed to propose any alternative accommodation for Mr. Pandey's documented medical needs, and would not engage in any sort of dialogue with Mr. Pandey regarding possible accommodations that could enable him to continue working despite his medical conditions. Mentor and Supervisor (defendant Mr. Simsek and defendant Ms. Popovici) continue to insist for long working hours.)

30. Mr. Pandey was shocked by the Mathworks's callous denial of his medical need for a simple temporary scheduling modification, and feared that this might cause permanent harm to his health if he ignored his doctors' instructions. Nevertheless, Mr. Pandey felt that he had no choice but to comply with the directive to continue working until late night, as he would be unable to afford treatment for the medical disorders that had been diagnosed since he started working at the Mathworks if he quit and became ineligible for employee health benefits.

31. Mr. Pandey's was traumatized and despite his strong will power and determination; ADHD (formally diagnosed later) symptoms started making him uncomfortable for the first time in life. Mr. Pandey was becoming forgetful, distracted and frequently losing focus from task at hand.

**F. Continued Discrimination due to race/color, national origin and disability of past Insomnia and current depression, distraction and forgetfulness - third retaliation for seeking accommodation, Harassment and Tortures conduct of forcing to work when not mentally fit, intentional infliction of emotional distress.**

32. This situation forced Mr. Pandey to discuss other alternatives with his doctors, hence revealing that working on H1-B visa and in the need for Green Card sponsorship, he is compelled to give far long work hours then average American worker at Mathworks. Hence previous note may have been interpreted as an attempt to avoid exploitation. As another temporary alternative until Mr. Pandey can arrange a break from work. Doctor requested another accommodation to have Mr. Pandey sleep longer in night and start working day in the late morning.

33. Despite doctor's note and verbal update to supervisor and mentor (defendant Mr. Simsek and defendant Ms. Popovici), Mr. Pandey kept receiving demand for work and meeting requests for early hours. There was no attempt from Mathworks to discuss if any other accommodation be arranged.

34. Soon after receiving the new request for accommodation, Mathworks put Mr. Pandey in Performance Improvement Plan (PIP henceforth) and made sure he fails in it. Mr. Pandey was given only 2 to 3 minutes to read this PIP document before a meeting arranged to discuss PIP with Mathworks executives. Mr. Pandey was promised a long vacation time of many weeks to address his health issues after he completes the PIP.

**G. Continued Discrimination due to race/color national origin and disability of past Insomnia and current depression, distraction and forgetfulness - forth retaliation for seeking sick time, Harassment and Tortures conduct of forcing to work when not mentally fit. Conspiring to take advantage of mental health, to prepare ground for termination before mental health issue is addressed, intentional infliction of emotional distress.**

35. The PIP was not an honest attempt by Mathworks to address any perceived performance issue. While Mr. Pandey was on PIP, he was doing very good work, although it was requiring enormous efforts on his part, putting all of his leftover mental energy with determination. But Mr. Pandey suffered obstructions, and deliberate misguidance, shifting goal posts, from Mathworks executives and his supervisor

overseeing PIP. Mr. Pandey came across many evidences of unfair behavior of Mathworks executives overseeing the PIP.

36. Mr. Pandey could not sustain the tortures conduct and fallen sick again for few days by the end of PIP duration.

37. On the return of Mr. Pandey, Mathworks unfairly pronounced the first PIP as unsuccessful. Mr. Pandey was given a second PIP, was again given 2 to 3 minutes to read before the meeting with Mathworks executives. Mr. Pandey resisted this new plan until he can address health issues. Mathworks resisted to give Mr. Pandey a break from work before completion of second PIP. Mr. Pandey decided to put it in writing despite risking another retaliation. Mr. Pandey forced himself out from work and survived Mathworks's attempts to deny him opportunity to address his health needs.

**H. Failure to accommodate/reinstate, violation of ADA by not following interactive process to establish fitness.**

38. Looking at the state of Mr. Pandey's health Dr. Awwad advised him to immediately take break from work on first encounter on 25th August 2016 and provided required paperwork for FLMA during another appointment on 30th August 2016.

39. Dr. Awwad was very conservative in recommending additional days during FLMA period, hence Mr. Pandey required to request FLMA paperwork many times. Around early Nov 2016 Mr. Pandey was diagnosed with ADHD. Mr. Pandey kept informing Mathworks frequently with all the updates. When "Short Term Disability" (STD henceforth) period of Mr. Pandey ended, he received a letter from Mathworks containing some of the required information. Mathworks had chosen not to inform Mr. Pandey about pending re-election for pre-tax payroll deduction for benefits for 2017.

40. Mathworks demanded exact date of return to work. By early January 2017 doctor obliged and gave an estimated date of return to work as 02/13/2017. Mathworks approved his FLMA until 02/13/2017. There was a delay of 9 days due to bad weather which was beyond anybody's control and Mathworks was continuously informed. Mr. Pandey arranged fitness approval from doctor and was fit to join back on 02/22/2017.

41. Mr. Pandey did not request any accommodation. Doctor put some temporary restrictions only for four weeks. Mathworks did not contact Mr. Pandey or his doctor to discuss details of these restrictions. Mathworks did not allow Mr. Pandey to come in person to discuss if he was in need for any accommodation. Mathworks provided no opportunity Mr. Pandey to prove fitness by interactive process mandated by ADA. After 02/22/2017 Mathworks called Mr. Pandey only on phone to inform him that

they are looking at paperwork provided by the doctor; and then again to inform Mr. Pandey that they decided to end his employment. Mathworks did not discuss any accommodation with Mr. Pandey. Only visit Mr. Pandey was allowed was to serve the termination paperwork just before effective termination date of 03/10/2017.

42. Mathworks gave Mr. Pandey different reasons for his termination at different points of time. Mathworks did not reveal that concerns regarding these temporary restrictions are the reason for his termination before their position statement submitted to MCAD. Once Mr. Pandey speculated this reason on his own and tried to clarify it over e-mails and insisted to reinstate. But Mathworks refused to accommodate.

43. Mr Pandey's harassment did not end with his termination. Mr Pandey's requests to reinstate were rejected by Mathworks. Mathworks offered Mr Pandey severance pay in return of release of any claim including any charges under ADA and under a host of other laws. Mr. Pandey learned about these laws over next few months. Mr. Pandey found that he was being misled by Mathworks in legal technical language, to deprive him off his pending LTD benefits also. Mathworks was also misleading Mr Pandey about his other rights like 21 days window to consider release offer, and applicability of worker's compensation.


**I. Fraudulent falsification of records, Involving third party "Mark Stefanick", and employee "Katalin Popovici" for Aiding and abetting to discriminate Harass and retaliate**

44. Defendant Mark Stefanick was engaged for Mr Pandey harassment starting Dec 2016. Mark Stefanick started interaction on behalf of Cigna which manages disability claims on behalf of "Mathworks Long Term Disability Plan". After STD benefits expired, Mr. Pandey was in very difficult financial situation and there were deliberate delays in processing of LTD claim by Mark Stefanick. Mr. Pandey discovered that Mark Stefanick was avoiding to act during the available time of weeks, and giving impossible deadlines to his doctors, sending illegible fax to his doctors, and claiming that faxes received from doctors can't be read. Mr. Pandey came across evidences Mark Stefanick misleading his doctors so that their response reach Cigna after deadline.

45. Mathworks own admission in "Position Statement" submitted to MCAD shows they knew that his LTD claim will be denied with the reason of non-cooperation from doctors. This was the reason of denial Mark Stefanick was initially trying to accomplish, but Mr Pandey's doctors did not give Mark Stefanick this opportunity. His doctors were responsive to Mark Stefanick promptly even on notices as short as one day. Hence in final denial letter of Cigna, Mark Stefanick was forced

to change the pretax of denial. It became obvious that defendant Mark Stefanick forgot to update Mathworks that the reason conveyed to Mr. Pandey is different than reason appears agreed with Mathworks before denial of his LTD claim.

46. For once Mr. Pandey decided to take severance pay in return of signing release. But he discovered that Mathworks was putting pressure or encouraging on their employee Katalin Popovici for not to cooperate with Mr. Pandey in his appeal against LTD denial under ERISA law. This act of MathWorks, compelled Mr. Pandey to revoke release agreement within allowed seven-day window.

47. Mr Pandey's LTD claim should have been approved by Cigna in 2016 but was unfairly denied at first. Cigna approved LTD benefits in 2018 for payments starting 2016, despite improved medical test results, and his doctors acknowledging it. It's also noticeable that in 2018, Cigna appeared in hurry to approve his LTD claim. As Cigna was unwilling to extend filing deadline for even for a day to have Mr Pandey do a minor correction in appeal letter. Cigna denied his waiver of premium claim as they consider Mr Pandey fit to work based on medical tests done after his termination by defendant. This LTD benefits approval was achieved only after Mr. Pandey appealed pursuant to ERISA regulations, and a detailed appeal letter with the evidences of his harassment and fraudulent falsification of records by Mark Stefanick was added with the ERISA appeal.

48. During preparation for appeal under ERISA law Mr. Pandey came across the documents submitted by Mathworks to Cigna to process LTD claim. Mr. Pandey came across the job description submitted to Cigna was very different from job description known to me. The fraudulent/falsified document submitted as the job description was one of the reasons the LTD claim was denied for years. This was also violation of USCIS regulations and DoL approvals and host of federal laws.

49. Feeling helpless time to time, these bad faith actions of Mathworks contributed in Mr Pandey's situational depression. Making it more difficult to find a new position. It was (and still is) enormously difficult time of Mr Pandey's life working with small term consulting companies with uncertain duration of their requirements. After the emotional disaster suffered because of Mathworks and its associate's conduct, plaintiff now sweats and start getting nervous prior to applying for a position in any reasonable big organization. The most viable position that was offered to plaintiff by a Framingham, MA based company. This turned out to be a fake offer, and offer was rescinded just before joining. Somehow company offering position knew about defendant's termination by plaintiff and making fun of plaintiff during communications. Since early 2020 Mr. Pandey realized that he sweats and feel nervous before applying to any permanent position in a reasonably big organization where interview processes like Mathworks are involved. Since Nov 2020 Mr. Pandey also started feeling like

quitting current employment also, due to having nightmares where he foresees current employer subjecting him to the same kind of tortuous conduct and inflicting same emotional distress subjected by defendants. To clarify, in reality my current employer is reasonable with me and happy with my work.

## J. Breach of contract

50. Along with offer of severance pay, Mathworks also asserted their old Non-Competition Agreement what Mr. Pandey signed in 2013 at the time of joining. Mathworks keep seeking Mr. Pandey's compliance to "Non-Competition agreement" after his termination. This act made it very difficult for me to find a new position. Mr. Pandey did his part of performance by not applying in companies he believes covered by "Non-Competition agreement", Mr. Pandey kept seeking advice from Mathworks HR department for correct information in this regard.

51. Mathworks continuously published open positions matching Mr Pandey's profile but he was barred by Mathworks from seeking position in Mathworks again. Mr. Pandey decided to seek payment pursuant to this contract signed in 2013. Mathworks did not respond to his demand for payment under this contract.

## COUNT ONE

### (Discrimination and Harassment in Violation of Section 1981 of the Civil Rights Act)

52. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 51, inclusive, as if fully set forth herein.

53. Defendants has discriminated/aided and abetted this conduct, against Plaintiff on the basis of his race/color Asian (Indian)/Brown in violation of Section 1981 by denying him the same terms and conditions of employment available to employees who are not Asian (Indian)/Brown, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination.

54. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

55. Defendant's unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT TWO

### (Retaliation in Violation of Section 1981 of the Civil Rights Act)

56. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 55, inclusive, as if fully set forth herein.

57. Defendant has retaliated/aided and abetted this conduct, against Plaintiff in violation of Section 1981 for seeking sick time as per defendant's policy, seeking FLMA, seeking accommodation to address health needs, and complaining of supervisor's discriminatory practices against himself, subjecting Plaintiff to acts of discrimination, harassment and humiliation, ignoring request for accommodation for Plaintiff's disabilities, transferring Plaintiff to new team to subject him to isolation, not doing due process of performance review, putting him in Performance Improvements plan, taking advantage of mental health to falsify evidences of low performance in PIP, unlawful termination, and encouraging coercing Plaintiff's co-workers to not cooperate in legitimate requests in another legal proceeding.

58. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

59. Defendant's unlawful and retaliatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**COUNT THREE**

**(Discrimination and Harassment in Violation of Title VII of the Civil Rights Act)**

60. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 59, inclusive, as if fully set forth herein.

61. Defendant has discriminated/aided and abetted this conduct, against Plaintiff on the basis of his national origin, disability, and race/color in violation of Title VII by denying him the same terms and conditions of employment available to other employees, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

62. Defendant has discriminated/aided and abetted this conduct, against Plaintiff on the basis of his national origin, disability, and race/color in violation of Title VII by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his national origin.

63. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

64. Defendant's unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT FOUR

### (Retaliation in Violation of Title VII of the Civil Rights Act)

65. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 64, inclusive, as if fully set forth herein.

66. Defendant has retaliated/aided and abetted this conduct, against Plaintiff in violation of Title VII rights for seeking sick time as per defendant's policy, seeking FLMA, seeking accommodation to address health needs, and complaining of supervisor's discriminatory practices against himself, subjecting Plaintiff to acts of discrimination, harassment and humiliation, transferring Plaintiff to new team to subject him to isolation, not doing due process of performance review, putting him in Performance Improvements plan, taking advantage of mental health to falsify evidences of low performance in PIP, unlawful termination, and encouraging/coercing Plaintiff's co-workers to not cooperate in legitimate requests in another legal proceeding.

67. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of violation of Title VII rights, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

68. Defendant's unlawful and retaliatory conduct in violation of violation of Title VII rights was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT FIVE

### (Violation of Duty of Reasonable Accommodation Under ADA)

69. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 68, inclusive, as if fully set forth herein.

70. Defendant violated its duty under the ADA to provide Plaintiff with a reasonable accommodation for his disabilities (diabetes and/or diverticulitis) when it denied Plaintiff's request for the reasonable accommodation identified by Plaintiff's treating physicians (modified work schedule), failed and refused to engage in discussion with Plaintiff regarding his need for an accommodation, and/or failed and refused to engage in discussion with Plaintiff regarding the potential provision of alternative accommodations after repeatedly denying Plaintiff's request for the accommodation

identified by Plaintiff's treating physicians. Finally terminating plaintiff when he attempted to return from FLMA without interactive process to find fitness.

71. As a direct and proximate result of Defendant's violation of its duty of reasonable accommodation under the ADA, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

72. Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

### COUNT SIX

**(Discrimination and Harassment in Violation of the Massachusetts Fair Employment Act - MGL c.151B)**

73. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 72, inclusive, as if fully set forth herein.

74. Defendant has discriminated/aided and abetted this conduct, against Plaintiff on the basis of his race/color, national origin and/or disabilities in violation of the MGL c.151B by denying him the same terms and conditions of employment available to other employees, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful harassment.

75. Defendant has discriminated/aided and abetted this conduct, against Plaintiff on the basis of his race/color and/or national origin in violation of the MGL c.151B by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his race/color, national origin and/or disabilities.

76. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the MGL c.151B, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

## COUNT SEVEN

**(Retaliation in Violation of the Massachusetts Fair Employment Act/chapter 151B)**

77. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 76, inclusive, as if fully set forth herein.

78. Defendant has retaliated/aided and abetted this conduct, against Plaintiff in violation of the MGL c.151B seeking sick time as per defendant's policy, seeking FLMA, seeking accommodation to address health needs, and complaining of supervisor's discriminatory practices against himself, subjecting Plaintiff to acts of discrimination, harassment and humiliation, transferring Plaintiff to new team to subject him to isolation, not doing due process of performance review, putting him in Performance Improvements plan, taking advantage of mental health to falsify evidences of low performance in PIP, unlawful termination, and encouraging/coercing Plaintiff's co-workers to not cooperate in legitimate requests in another legal proceeding.

79. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the MGL c.151B, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

## COUNT EIGHT

**(Violation of Duty of Reasonable Accommodation Under the Massachusetts Fair Employment Act/chapter 151B)**

80. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 79, inclusive, as if fully set forth herein.

81. Defendant violated its duty under the MGL c.151B to provide Plaintiff with a reasonable accommodation for his disabilities (diabetes and/or diverticulitis) when it denied Plaintiff's request for the reasonable accommodation identified by Plaintiff's treating physicians (modified work schedule), failed and refused to engage in discussion with Plaintiff regarding his need for an accommodation, and/or failed and refused to engage in discussion with Plaintiff regarding the potential provision of alternative accommodations after repeatedly denying Plaintiff's request for the accommodation identified by Plaintiff's treating physicians.

82. As a direct and proximate result of Defendant's violation of its duty of reasonable accommodation under the MGL c.151B, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

**COUNT NINE**

**(violation of the Age Discrimination in Employment Act ADEA, 1967)**

83. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 82, inclusive, as if fully set forth herein.

84. Defendant violated its duty under the ADEA to provide Plaintiff by failing/misrepresenting notice, time and other updates due under ADEA.

85. As a direct and proximate result of Defendant's violation of its duty of under the AEDA, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

**COUNT TEN**

**(Intentional Infliction of Emotional Distress)**

86. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 85, inclusive, as if fully set forth herein.

87. Defendant's conduct from early 2016 to Nov 2017 constitutes a series of actions where they intended to cause emotional distress, teaming up with own employees and third party(s), defendant subjected plaintiff severely torturous conduct. Including but not limited to forcing plaintiff to work when he was mentally sick and unable to do so, conspiring to take advantage of mental state of plaintiff to fake evidences of low performance, causing obstructions for his opportunities to address health issues, demanding him definite date to secure fitness from doctors so that he can be terminated upon return. Falsifying documents and other information to ensure denial of plaintiff's legitimate benefits. Teaming up with third parties to harass, retaliate again plaintiff, and misleading, misinforming plaintiff on numerous occasions.

88. As a direct and proximate result of Defendant's conduct, the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it. Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

## COUNT ELEVEN

### (Violations of Immigration & Nationality Act - 8 USC 1182 )

89. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 88, inclusive, as if fully set forth herein.

90. Defendant Mathworks is in violations by misrepresentation of material fact on the labor condition application; and willful Violation of the work contract and requirement of 8 USC 1182, and 20 CFR part 655.810; A willful failure pertaining to wages/working conditions, labor condition application and discrimination against an employee specificity 20 CFR 655.801, and 8 USC 1182(n)(2)(c).

91. As a direct and proximate result of Defendant's violations of 8 USC 1182, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages.

## COUNT TWELVE

### (Negligent Hiring, Retention and Supervision)

92. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 91, inclusive, as if fully set forth herein.

93. Defendant Mathworks has violated its duty as Plaintiff's employer to provide a safe workplace, to take reasonable steps to determine the fitness of Plaintiff's co-workers and supervisors and to reasonably supervise Plaintiff's co-workers and supervisors by, inter alia, failing and refusing to investigate and/or take appropriate disciplinary or other action in response to Plaintiff's repeated complaints of discriminatory and harassing conduct by his co-workers and/or supervisors on the basis of his race/color, national origin and/or disabilities. Defendant had actual knowledge of the undue risk of harm to which it was thereby exposing Plaintiff based on Plaintiff's repeated written and verbal complaints to his supervisors and Human Resources officials at the Mathworks.

94. As a direct and proximate result of Defendant's breach of duty to supervise, Plaintiff has been injured and has incurred damages thereby.

## COUNT THIRTEEN

### (Breach of contract)

95. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 94, inclusive, as if fully set forth herein.

95. Referencing Non-Competition Agreement Mr. Pandey signed in 2013 (Exhibit – A) at the time of joining. Mathworks keep seeking Mr. Pandey compliance to "Non-Competition agreement" after his termination. This act made it very difficult for Mr Pandey to find a new position. Mr. Pandey did his part of performance by not applying in companies he believes covered by "Non-Competition agreement", when Mr. Pandey decided to seek payment pursuant to this contract signed in 2013. Mathworks did not respond to demand (Exhibit – B) for payment under this contract.

96. Mathworks is in breach for causing Mr. Pandey economic loss of $78946.23 plus applicable interest and other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Massachusetts;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and harassing treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect his employment and personal life;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and injuries;

G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H. An award of punitive damages;

I. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: Sharon, MA
Jan 05, 2021

Respectfully submitted,

By: Ajay Pandey


57, South Walpole St.,
Sharon, MA, 02067
Telephone: (603) 324-9378

Plaintiff Pro Se

To

Shiela Mcardle,                                                    Nov 14, 2017
The Mathworks Inc.
3 Apple Hill Drive,
Natick, MA, 01760

**Sub: Compensation under Employee Confidentiality, Non-Competition and Inventions Agreement**

This request is with reference to "Employee Confidentiality, Non-Competition and Inventions Agreement" signed by me with Mathworks on 03/24/2013. As mentioned in the section of Non-Competition. I am seeking payment from the Mathworks under this agreement. For the periods as follows:

|                  | Requested from Mathworks | Compensation Earned in new employment |
|------------------|--------------------------|----------------------------------------|
| March 2017 -     | 3 Work weeks             | $0                                     |
| April 2017 -     | 4 Work weeks             | $0                                     |
| May 2017 -       | 5 Work weeks             | $0                                     |
| June 2017 -      | 4 Work weeks             | $0                                     |
| July 2017 -      | 4 Work weeks             | $0                                     |
| August 2017 -    | 5 Work weeks             | $0                                     |
| September 2017 - | 4 Work weeks             | $0                                     |
| October 2017 -   | 4 Work weeks             | $0                                     |
| Total -          | 33 Work weeks            | $0                                     |

33 Work weeks @ 4784.62 per 2 work week = 78946.23

Requested amount difference in compensation - $78946.23 - $0 = **$78946.23**

Please let me know if you require this notification in any other format or template. Please reply if you need any other information.

Very truly yours

Ajay Pandey
57 South Walpole St., Sharon, MA, 02067
Phone: 603-324-9378

Copy

## THE MATHWORKS, INC.

## EMPLOYEE CONFIDENTIALITY, NONCOMPETITION AND INVENTIONS AGREEMENT

In consideration of my employment by The MathWorks, Inc. or any of its successors (together the "Company"), I agree as follows:

### Confidentiality

I understand that the Company continually obtains and develops valuable proprietary and confidential information concerning its business, business relationships and financial affairs (the "Confidential Information") which may become known to me in connection with my employment. Confidential Information includes, but is not limited to, Inventions (as hereafter defined), trade secrets, technical information, know-how, research and development activities of the Company, product and marketing plans, customer lists, supplier information, employee information, including internal telephone directories, financial information and information disclosed to the Company or to me by third parties of a proprietary or confidential nature or under an obligation of confidence. Confidential Information may be found in various media, including without limitation, patent applications, computer programs in object and/or source code, flow charts and other program documentation, manuals, plans, drawings, designs, technical specifications, laboratory notebooks. supplier and customer lists, internal financial data and other documents and records of the Company.

I acknowledge that all Confidential Information, whether or not in writing and whether or not labeled or identified as confidential or proprietary, is and shall remain the exclusive property of the Company. Upon the termination of my employment, or at any time upon the Company's request, I shall return immediately to the Company any and all materials containing any Confidential Information then in my possession or under my control.

I agree that I shall not, either during the term of my employment or any time thereafter, publish, disclose or otherwise make available to any person outside of the Company any Confidential Information. I agree that I shall use such Confidential Information only in the performance of my duties for the Company and in accordance with any Company policies with respect to the protection of Confidential Information. I agree not to use such Confidential Information for my own benefit or for the benefit of any other person or business entity.

### Assignment of Inventions

I agree promptly to disclose to the Company any and all ideas, concepts, discoveries, inventions, developments, original works of authorship, software programs, software and systems documentation, trade secrets, technical data and know-how that are conceived, invented or developed by me, under my direction or jointly with others during any period that I am employed by the Company, and during a period of one year after, whether or not during normal working hours or on the premises of the Company, which relate, directly or indirectly, to the present or future business of the Company (defined as "Inventions").

I assign to the Company all of my right, title and interest to the Inventions and any and all related patent rights or copyrights. During and after my employment, I shall cooperate with the Company, at the Company's expense, in obtaining proprietary protection for the Inventions and I shall execute all documents which the Company shall reasonably request in order to perfect the Company's rights in the Inventions. I appoint the Company my attorney to execute and deliver any such documents on my behalf in the event I should fail or refuse to do so within a reasonable period following the Company's request.

I acknowledge that all original works of authorship made by me within the scope of my employment which are protectible by copyright are intended to be "works made for hire", as that term is defined in Section 101 of the United States Copyright Act of 1976 (the "Act"), and shall be the property of the Company and the Company shall be the sole author within the meaning of the Act. If the copyright to any such copyrightable work shall not be the property of the Company by operation of law, I will, without further consideration, assign to the Company all of my right, title and interest in such copyrightable work and will maintain and defend for the Company's benefit copyright to such work. I waive all claims to moral rights in any Inventions.

### Non-Competition

I agree that while I am employed by the Company and for a period of one year after the termination of such employment for any reason, I shall not, without the Company's prior written consent, directly or indirectly, develop, design, produce, market or sell (or assist any other person or entity in developing, designing, producing, marketing or selling) products or services competitive with those developed, designed, produced, marketed or sold by the Company. I understand that if I am a principal, employee, consultant or partner or have an ownership interest greater than 1% in an entity that develops, designs, produces, markets or sells products or services competitive with those of the Company, I will be in violation of this provision.

If, after diligent efforts, I am unable after the termination of my employment with the Company, due solely to the restriction contained in this Agreement, to obtain employment at a rate of compensation at least equivalent to my base rate of compensation at the time of such termination of employment and, therefore, accept employment at a lower rate of compensation, the Company agrees to pay to me, on a monthly basis during the period beginning upon the commencement of such new employment and ending upon the termination of my non-competition obligations under this Agreement, as additional consideration for my obligations under this Agreement, a sum equal to the difference between my monthly rate of compensation at the time of termination and my monthly rate of compensation from my new employment.

I shall notify the Company in writing within 15 days after any calendar month as to which I seek payment under the preceding paragraph. As a condition to such payment, I must establish to the Company's reasonable satisfaction (i) my diligent efforts to obtain employment at a compensation level commensurate to my level with the Company and (ii) the amount of compensation earned at my new position.

2

The Company may, at any time upon 30 days prior written notice to me, notify me that it will no longer be obligated to make any payments to me, in which event I shall be relieved of all my obligations under the non-competition provisions of this Agreement as of the end of such 30-day period.

### Non-Solicitation of Employees

I agree that during my employment with the Company, and for a period of two years after the termination of such employment for any reason, I shall not directly or indirectly recruit, solicit or hire any employee of the Company, or induce or attempt to induce any employee of the Company to discontinue his or her employment relationship with the Company.

### Non-Solicitation of Customers

I agree that during my employment with the Company, and for a period of two years after the termination of such employment for any reason, I shall not solicit, divert or take away, or attempt to divert or take away, the business or patronage of any of the clients, customers or accounts, or prospective clients, customers or accounts, of the Company which were contacted, solicited or served by me while employed by the Company.

### Limit on Other Business Activities

I agree that while I am employed by the Company, I shall not participate, directly or indirectly, in any business or activity that is related to, could interfere with, or is in competition with the Company, its customers, or its suppliers.

### No Right to Continued Employment

I understand that I am employed on an at-will basis and that this Agreement does not constitute a contract of employment or create an obligation on the part of the Company to continue my employment with the Company.

### General

In the event that any one or more of the provisions of this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement, and all other provisions shall remain in full force and effect.  If any provision of this Agreement is held to be excessively broad, it shall be reformed by limiting and reducing it so as to be enforceable to the maximum extent permitted by law.

I acknowledge that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and are reasonable for such purpose.  I agree that any breach of this Agreement by me will cause irreparable damage to the Company and that in the event of such breach, the Company shall be entitled, in addition to monetary damages

3

and to any other remedies available to the Company under this Agreement and at law, to equitable relief, including injunctive relief.

This Agreement shall be construed as a sealed instrument and shall be governed by, and construed in accordance with, the laws of the State of Massachusetts.

**I HAVE READ ALL OF THE PROVISIONS OF THIS AGREEMENT AND I UNDERSTAND, AND AGREE TO, EACH OF SUCH PROVISIONS.**

03/24/2013
Date

*Ajay Pandey*
(Signature)
Print Name: AJAY PANDEY

Title: Senior Software Engineer

Acknowledged and agreed to by:

THE MATHWORKS, INC.

By: _____

Name: _____

Title: _____

4